**SUPER–COLD SOUTHWEST CO. v. CHOWNING et al.**

**No. 14477.**

Court of Civil Appeals of Texas. Dallas.

March 21, 1952.

Rehearing Denied April 25, 1952.

Curtis White and Dee Brown Walker, both of Dallas, for appellant.

A. G. Henry and Jess Rickman, both of Kaufman, for appellees.

CRAMER, Justice.

L. A. Chowning and Frank Good, hereafter called Chowning and Good, filed this suit against Super-Cold Southwest Company, hereafter called Super-Cold, and also against L. W. Bray, Super-Cold's salesman, seeking to cancel the sale by Super-Cold through Bray of a meat display refrigerating case, a vegetable display refrigerating case, scales, cash register, etc., to them at the time they opened a grocery and market on the Dallas-Kaufman road in the town of Crandall in September 1949, and for damages for alleged loss of trade in their business due to the failure of the fixtures sold to them by Super-Cold to properly operate as represented by Bray The cause of action was one based on fraud by Bray. Super-Cold answered by general and special denials, filed a cross-action for the balance claimed to be due on the notes signed by Chowning and Good, and for foreclosure of its lien on the fixtures; and pled that Chowning and Good be barred from asserting their claims, if any, because of the continuous use of the fixtures for several months after they knew or should have known that the fixtures were defective; also denying that the fixtures were in fact defective.

The jury in answer to special issues found in substance that: (1) Before the contract was signed, Bray represented to Chowning and Good that the meat counter

and vegetable counter would properly refrigerate food such as meat, milk and vegetables; (2) such representations were material and were at the time relied upon and acted upon by Chowning and Good; (3) and induced Chowning and Good to execute the contract and note sued on; (4) such representations were false; (5) Chowning and Good advised Super-Cold that the meat and vegetable counters failed to properly refrigerate and keep meat, milk and vegetables in edible and saleable condition; (6) Super-Cold through representatives sent out on the complaint, promised Chowning and Good that both the meat and vegetable counters would be repaired and adjusted in such manner as to cause them to properly refrigerate and keep meat, milk and vegetables; (7) Chowning and Good relied upon such representations; (8) Super-Cold failed to repair and adjust the counters as promised; and (9) Chowning and Good acted with due diligence and within reasonable time in asserting their right and intention to set aside the purchase contract.

From the judgment rendered on the verdict which cancelled the notes and mortgages and awarded Chowning and Good damages of $1,233.81 plus interest and costs, denied Super-Cold a recovery on its cross-action and denied Chowning and Good a recovery against Bray, Super-Cold has duly perfected this appeal and here assigns 38 points of error. Such points will be considered in groups the same as appellant has briefed them.

Points 1 to 6 assert error in the overruling of their motions for an instructed verdict, for judgment n. o. v., and for new trial because Chowning and Good, by continuing to use the fixtures, waived their right to rescind and were estopped to rescind the contract and note, and that such use of the equipment coupled with their failure to bring suit after they knew of the defects, if any, was a failure to act with diligence as a matter of law. The evidence material to these points was in substance that in September 1949, Chowning and Good began the operation of a grocery and market on the Dallas-Kaufman pike as it passes through the town of Crandall,

and about September 10, purchased from Super-Cold the fixtures here involved, paying therefor $1 cash and one note for $4,045 payable $165 per month for 23 months, and a last payment of $250 on the 24th month, with interest on the principal from the maturity dates of the installments. The note was secured by chattel mortgage. Thereafter, after complaint by Chowning and Good, Super-Cold picked up the cash register and delivered another in its place under an agreement that $15 be added to the price. The substitute, or rewritten contract, contained the $15 charge which Chowning and Good paid at the time.

Chowning testified, material here, that he did not know much about the grocery business, but Good, who had engaged in such business, told him to get good equipment; that Bray told him the vegetable case would keep vegetables indefinitely, around two weeks; that the meat box would keep meat satisfactorily from ten days to two weeks; that he told Bray at the time that other stores there had not been able to keep them, and Bray then stated a vegetable box was a combination milk and vegetable box and would keep milk and vegetables for about a week; that if they would not do what he said, they would take them up because it was a standard Company; that the boxes would be serviced for ninety days; that he, Chowning, had made complaint about the boxes to Bray and also direct to the Home Office to the effect that the boxes were not keeping meat, vegetables and milk satisfactorily, and asked for service and adjustments thereon; that Bray told him they would take care of it, and that they did send a representative out, but such representative did not cause the boxes to refrigerate as promised; that before the ninety-day service period expired Good made many complaints and called over the phone and advised Super-Cold the boxes were not operating as they should, and Super-Cold promised that they would take care of the boxes; but said boxes were not taken care of as promised; that he went to Dallas, and, Bray not being present, he talked to a Mr. Fallon; that Fallon

stated he didn't give a damn whether the boxes ran 48 hours after the time expired; that he, Chowning, told Fallon that if he would pick them up and get them out of the way, so they could get more boxes, he would get other boxes and lose the money he had paid in. Fallon then told him he, Chowning, was worth the money and would have to pay.

Chowning's evidence showed the use of the boxes to April 7, 1950. The store was closed in June 1950 and the equipment, other than the two boxes, was used until the store was closed. On cross-examination, his evidence in addition to the above was that he did not know what temperature the boxes maintained; that after he made the trip to Dallas in April and talked to Mr. Fallon, and he told "us what he did, I came back and told Mr. Good we would just cut those boxes off because they wouldn't keep the meat and I didn't want to use them after he decided we couldn't keep them." He further testified that he did use the boxes after January 1950, but that on that date a meter was put on the box of Super-Cold and it was necessary, in order to use same, to put money in the meter to keep them running. The meter showed the amounts placed therein by Chowning and Good, and taken out by Super-Cold on the following dates, to be as follows: January 13, 1950, $154; February 9, 1950, $148.50; March 10, 1950, $159.50; April 7, 1950, $154.

Frank Good, material here, testified on direct examination substantially the same as Chowning, and on cross-examination that after the last repair man had visited them they were still having trouble; that Bray promised that something would be done; that on the trip he and Chowning made to see Fallon, Mr. Chowning told Fallon the boxes were bad and he couldn't get him to do anything; and if they would pick them up, why "we would just lose our $1,300 we had paid if they would give us our contract, if they would give us our contract we would just lose the $1,300 and let them take up all the boxes," and Fallon refused; said Chowning was worth it and they would have no more service and he didn't care whether they ran any more or not, the

ninety days was up. He also testified he did not know what temperatures were maintained in the boxes, and that the boxes were in use until April 1950.

Fallon testified by deposition that no complaint was made to him about the performance of the machines, but Chowning and Good wanted to turn the equipment back because they found it impossible to make a go of the business; that he told Chowning the company would not cancel the note and mortgage and would not take the equipment back and that he was the head man in Texas.

This suit was filed in the District Court April 24, 1950. Good also testified that he was tendering the machines back because they didn't do the work and Super-Cold couldn't fix them, and it was breaking them, and there wasn't anything else for them to do.

Under such record, we are of the opinion that the points should be overruled. This case is similar to the case of Super-Cold Southwest Co. v. Willis, Tex.Civ.App., 219 S.W.2d 144, ref. n. r. e., by this Court. See Note 1.

Chowning and Good made complaints about the box and Super-Cold, after complaints, made calls to repair and service the box for ninety days. After such ninety-day period, and after appellant refused to further repair or replace the boxes, Chowning and Good quit making payments on same, and thereafter Super-Cold placed the meters on the boxes.

Super-Cold in its argument under these points states its position as follows:

"And they also alleged that Super-Cold Southwest Company refused to accept the property back on the 12th day of December, 1949, after Chowning and Good tendered it to the Company. As a matter of fact, it is believed this is erroneous, that this actually occurred about the first part of January as Chowning and Fallon testified, but even so, either December 12 or early in January, plaintiffs continued to use Super-Cold's property from that time until into the month of April 1950, and some of it down into

June of 1950, after they had become aware that they had been defrauded, if in fact they were, which is not admitted but denied. There can be no doubt that in equity and as a matter of law plaintiffs waived any right to rescind the contract which they might have otherwise had."

██ While it is true that a purchaser of personal property may waive or lose his right to rescind for fraud by continuing the use of the property after the facts which give the right to rescind, such rule has qualifications and exceptions. If by the promises and acts of the seller, the purchaser is led to believe the item or items purchased will be repaired or otherwise made to perform as originally represented, the purchaser is justified in believing such promises and is excused from immediately repudiating the sale or contract. The rule as to diligence and as to when it becomes a question of fact, was passed upon by us in the Willis case, supra, syls. 5–8, 219 S.W.2d at page 148. Under the record here the issue of diligence was for the jury, and the jury having settled such question, such finding is final. Points 1 to 6, inclusive, are overruled.

Points 7 to 10 assert in substance error of the trial court, (7) in overruling its motion for an instructed verdict; (8) its motion for judgment n. o. v.; (9) in admitting over its objection parol testimony as to terms of the contract; and (10) in sustaining Chowning and Good's motion for judgment, because the representations were not of that character of fraud which would authorize a rescission of the contract; they vary the terms of the contract; and, the jury did not find that Super-Cold or its agent did, or failed to do, anything which would justify the finding of fraud. The contract in question contained the following provision:

"No agreement except what is embodied herein shall be binding upon the parties hereto and it is declared that this contract and the above mentioned promissory note contains all agreements, representations, covenants and warranties, express or implied, relative to the operation and sale of said property, and the price thereof and the payment therefor.

"This equipment is not ordered on trial. This contract is not subject to cancellation. The property herein sold is purchased *as is*.

"I have read contract and it contains all terms and conditions covering this sale. I hereby acknowledge to have received a true and correct copy of this contract of sale."

██ The evidence of Chowning and Good as to the representations by Bray was objected to and the objections were overruled, exception reserved, and all motions of Super-Cold complained of the error. The jury findings to issues 1 to 4, inclusive, hereinabove set out in substance, were supported by evidence and although controverted, made a jury issue of fraud in the inception of the contract. Under such record, Super-Cold's contention that since there is no jury finding that any misrepresentation as to what the contract contained, or did not contain, and no proof or finding that Chowning and Good did not have an opportunity to read either of the contracts signed by them, or that they were induced by Bray not to read them, or that they did not fully understand the contracts, such lack of evidence barred a recovery by them; citing Super-Cold Southwest Co. v. Elkins, 140 Tex. 48, 166 S.W.2d 97. The Elkins case was one involving the question of an implied warranty; no express warranties appearing in the contract. That question is entirely different from the one here. The case here is based on fraud in the inception of the contract and the reliance on fraudulent statements. This excused them from reading the contract to see if the agent was telling the truth. They had a right to rely on his statements. Findings of the jury also distinguish this case from the case of Distributors Inv. Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47. See also 30 Texas Law Review, No. 3, p. 341, and 29 Texas Law Review, No. 2, p. 270. Points 7 to 10, inclusive, are overruled.

Point 11 complains of the trial court's failure to make inquiry in its charge as to whether or not, but for the representations as to the counters, Chowning and Good

would have executed the contracts involved here. This was a material issue. Special issues 2 and 3 were as follows:

"Special Issue No. 2: Do you find from a preponderance of the evidence that such representations made by the said L. W. Bray, if any, were material representations upon which the plaintiffs relied at the time they were made? Answer 'Yes' or 'No'. Answer: Yes. Special Issue No. 3: Do you find from a preponderance of the evidence that such representations, if any, induced the plaintiffs, L. A. Chowning and Frank Good, to execute the contract and note in evidence? Answer 'Yes' or 'No.' Answer: Yes."

Appellant's objections to issues 2 and 3 as briefed were as follows:

"It objected to issue 2 for the reason it was not apparent which contract the court had in mind; because it was multifarious in that it inquired about representations; and because it was based upon a supposed but non-existent right in appellees to vary the written contract by parol. It objected to 3 because it was multifarious in that it inquired about representations both as to the meat case and vegetable case; about representations rather than one; because it was based upon a supposed but non-existent right in appellees to vary the written contract by parol; and because the issue did not specify which note and contract the court had in mind. And further, because the court made no inquiry in his charge concerning the matter of whether but for such representations the contracts would or would not have been executed. (That this is a necessary element in a suit to rescind a written contract for fraud, see Davis v. Commercial Standard, Tex.Civ.App., 194 S.W.2d 599 (writ ref. N.R.E.), Avery Co. of Texas v. Harrison Co., Tex.Com.App., 267 S.W. 254, sec. 3 at page 257 of opinion.)"

A separate issue was not requested by Super-Cold as to whether or not, but for such representation, the contract would not have been executed, but relied upon the above quoted objections to the charge. Under Rule 279, Vernon's Texas Rules of Civil Procedure, which provides as follows, "Failure to submit an issue shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment; Provided, However; That Objection To Such Failure Shall Suffice In Such Respect If The Issue Is One Relied Upon By The Opposing Party." (Capitalization ours.) It was not necessary to request an issue and the objection was sufficient. However in special issue No. 3 the court did inquire of the jury as to whether or not the representations induced Chowning and Good to execute the contract and note in evidence. The term "induced" was not defined by the court. However appellant does not brief the error, if any, of such lack of definition of the word "induced" and such a definition of the legal meaning of the term is therefore waived. The term "induced" as used in special issue 3, not being defined as a legal term, was therefore to be considered by the jury in its ordinary meaning. The New Century Dictionary, 1942, at p. 819, defines "induced" as follows:

"Induce. To lead or bring in; introduce; bring forward; or adduce; * * * Prevail upon, influence or move; also, to bring about, produce, or cause (as this measure induced discontent; opium induces sleep); * * inducement, the act of inducing; also, something that induces or persuades; an incentive; * * *."

Under such definition, such term included within its ordinary meaning the elements of the omitted issues and was a submission thereof. Lack of proper objection to such submission of the question of whether or not Chowning and Good would have executed the contract were it not for Bray's representations, the error was therefore harmless and not reversible. Point 11 is overruled.

Points 12 to 20 complain separately of the overruling of its objections to issues 1 to 9 inclusive.

510

Super-Cold's brief asserts that issues 1 to 9 are each multifarious in that they each inquired about representations as to both the vegetable refrigerator box and the meat refrigerator box in the issue. The evidence in this case justified the court in so submitting such issues. The pleadings and the evidence were both general and were that, "The cases would refrigerate meat, milk and vegetables and keep them in saleable and edible condition." There is no evidence that the salesman made such representations separately as to each box. Under such record, the error, if any, was harmless and not reversible. Points 12 to 20, inclusive, are overruled.

Point 21 asserts error in the exclusion from the evidence by the court of a work sheet signed by Good, it being offered in evidence to show signatures on the contracts. Since the signatures on the contracts were not denied, no error is shown by this point. Point 21 is overruled.

Points 22 to 36 complain that the answers of the jury to issues 1 to 9 are not raised; are not sustained by the evidence; and are against the great preponderance of the evidence.

We have examined the evidence and are of the opinion that it raised the issues, and that the findings of the jury are not against the preponderance of the evidence. The material evidence here is set out under our discussion of points 1 to 6 and will not be repeated here. Points 22 to 36, inclusive, are each overruled.

Point 37 complains of the trial court's submission over objection of evidence of claimed loss in business from month to month because of the defective condition of the boxes. Such evidence was admissible in connection with the issues of fraud and to show damage and to show the manner in which the boxes operated.[1] However it was not the basis of a recovery for the amount of such loss. Super-Cold Southwest Co. v. Willis, Tex.Civ.App., 219

S.W.2d 144; Super-Cold Southwest Co. v. Green & Romans, Tex.Civ.App., 196 S.W. 2d 340. Point 37 is overruled.

Point 38 asserts error in the trial court's refusal to enter judgment for Super-Cold on its cross-action. The jury's verdict was favorable to Chowning and Good for a cancellation of the notes and contracts; therefore the notes and contracts having been cancelled by the judgment, no recovery could have been granted Super-Cold on such contracts. Point 38 is overruled.

Finding no error in the points briefed, the judgment below is affirmed.

Affirmed.

---

1. The meat boxes used from January to April 1950 were similar to those used in other cases. Perkins v. Super-Cold Southwest Co., Tex.Civ.App., 241 S.W.2d 311, 312. In the Perkins case this Court stated: " * * * by deposits, as required by Super-Cold, in the meter box in the electric line to the equipment covered by the mortgage securing the note; * * *."