Harry FRIEDMAN, Appellant,

v.

POWELL ELECTRICAL MANUFACTURING CO., Inc., Appellee.

No. 15497.

Court of Civil Appeals of Texas, Houston (1st Dist.).

June 11, 1970.

Rehearing Denied July 23, 1970.

Sears & Burns, Houston, for appellant;
David F. Beale, Robert L. Burns, Houston,
of counsel.

Ladin, Weycer & Schultz, Houston, for appellee; William M. Schultz, Houston, of counsel.

COLEMAN, Justice.

This is a suit for title and possession of certain real estate based on an alleged constructive or resulting trust. The trial court entered a judgment for the plaintiff based on a jury verdict.

While there were other parties to the suit in the trial court, only Harry Friedman has appealed. He restricts his appeal to that part of the judgment which (1) establishes a constructive trust in the real estate, (2) sets aside a deed to appellant of an undivided ⅓ interest in such tract of land, and (3) divests appellant's title and interest to such tract of land. For the purposes of the appeal appellant has stipulated that his only claim of title to the land is the deed of an undivided ⅓ interest to him from Brunson and Shea, and that if the trial court properly decreed a constructive trust in favor of appellee his title is defeated.

Robert H. Orr was the Secretary-Treasurer of Powell Electrical Manufacturing Company, Inc. In the Spring of 1964 he was instructed to make arrangements to construct a new plant for appellee. There were business and tax considerations in connection with the project. He determined that a tract of land located at Millette and Lavaca Streets in Houston, Texas, was suitable for the purpose. For business reasons Orr decided that the property be purchased by an investor who would construct a building to meet the company's requirements and lease it to the corporation. He required that the lease include an option to purchase in order that title could be acquired by the Powell Profit Sharing Trust. It was his opinion that in this manner tax savings could be realized, but that these savings would be less certain if the property was purchased by appellee or the trust.

Orr had consulted with certain contractors about plans for the building and construction costs. During the course of these meetings Orr was informed that Lawrence Newton Shea and Benjamin J. Brunson had been interested in similar lease-back land transactions. Orr got in touch with Shea and told him of appellee's requirements for plant facilities, the terms of the lease that appellee desired, and the terms of the purchase option desired. Shea was interested and an agreement resulted in August, 1964.

Pursuant to this agreement Brunson and Shea contracted with the owners to purchase the Millette Street property, and entered into a long term lease with appellee whereby they agreed to build the plant and lease it to them on a long term basis. The first and last month's rental under the lease was paid in advance in the sum of $4,400.00. Brunson and Shea put up earnest money in connection with the contract to purchase the land in the sum of $2,500.-00. A letter agreement dated August 25, 1964, was executed whereby Brunson and Shea agreed to contract for the land and deposit the earnest money. It was also agreed that in the event Brunson and Shea were not able to secure sufficient financing to build the plant, and, "for that reason solely," they did not build the proposed building, appellee would reimburse them for the $2,500.00 earnest money. There was testimony that Shea orally agreed to assign the land purchase contract to appellee if he did not get the required financing.

Brunson and Shea were partners. Brunson attempted to secure financing, but Shea was more active in dealing with Orr and Powell. Friedman originally got into the deal in attempting to obtain financing for a fee, but later became a partner in the deal with Brunson and Shea. After a period of time had elapsed and Shea had not secured a commitment for the permanent financing of the building, Orr requested Shea to assign the earnest money contract to Mr. Newsome, who was on appellee's Board of Directors. The assignment was made. A few days later Mr. Edmundson, a loan broker, informed Brunson and Shea that

he had a source for the financing. Shea gave this information to Orr.

About the middle of December Orr told Shea that they could not make an agreement with Newsome about constructing the building, and asked whether he was interested in getting back into negotiations with appellee concerning the building. Shea stated that he was interested. He then attempted to get Newsome to reassign the Millette Street property to them. Newsome refused to do this except for a price deemed unreasonable.

All parties then began to look for suitable sites. There is conflict in the testimony as to whether Shea's attention was first directed to the Mosley Street property by Tom Powell. This site was finally agreed upon as being suitable on December 28, 1964, but all other possible sites were not eliminated until the next day. Shea testified that he had tied up the land before he had a lease from appellee. Brunson testified that after Shea told him about the land it was agreed that they would buy it whether they made a deal with appellee or not. Kastleman, the real estate broker involved, testified that he prepared the earnest money contract December 27 or 28, 1964.

Shea presented a letter proposal to construct the plant for appellee on the Mosley Street property to Orr on December 30, 1964. A new lease agreement, essentially the same as the one used in connection with the Millette Street property, was prepared and executed by Shea on January 6, 1965. Shea had never returned to appellee the $4,-400.00 paid as advance rental on the Millette Street lease. At the time of the execution of the new lease Orr paid Shea an additional $2,550.00 so that the rental for the first and last month under the new lease would be prepaid after allowing credit for the earnest money paid on the Millette Street property by Shea.

Shea executed an earnest money contract dated January 1, 1965, for the purchase of the Mosley Street property and signed a check on Brunson-Shea Investment Company in the sum of $500.00. The check, dated January 4, 1965, and the contract were delivered to Kastleman, the real estate broker, on January 6, 1965. The letter agreements between Brunson and Shea and appellee were dated January 4, 1965.

Orr and William Powell testified that Shea told them, when he signed the two letter agreements, that if he could not secure a commitment for a permanent loan, the property would be returned to appellee to proceed with another investor. Over objection, Orr testified that appellee would not have instructed Shea to take the earnest money contract in the name of Brunson-Shea Investment Company without such a statement. Shea testified that he did not remember making such a statement. He remembered that he and his partners had decided to buy the property whether or not Powell wanted to build on it. Both Brunson and Friedman testified that they knew nothing about Shea agreeing to assign the earnest money contract to appellee. Both thought that the purchase was made as an investment. William Powell was appellee's President. He testified that he did not consider Shea his agent, but rather a friend in whom he had confidence.

Shea submitted the new deal to Edmundson, the loan broker. In March, 1965, appellee became dissatisfied with the delay in securing a commitment for the permanent loan, and finally requested that the lease agreement be terminated, and that the Mosley Street tract be assigned to it. The final discussions took place on March 10, 1965, and March 11, 1965. At these meetings appellee learned for the first time that appellant was interested in the transaction. Subsequently Brunson and Shea completed the purchase of the property. Appellee filed this suit and a lis pendens notice. Brunson and Shea conveyed a ⅓ interest in the property to Friedman. After the suit was filed Brunson and Shea settled with appellee, and appellee acquired their ⅔ interest in the property.

Friedman plead the Statute of Frauds and the Texas Trust Act. He denied the existence of a fiduciary relationship, and the existence of an oral agreement to convey the subject property to appellee.

The jury found that Lawrence Newton Shea and Benjamin J. Brunson were acting in a fiduciary relationship on behalf of appellee when they executed the earnest money contract on the Mosley Street tract of land; that prior to the execution of this contract Shea represented to appellee that Brunson-Shea Investment Company would assign the earnest money contract to appellee in the event Brunson-Shea Investment Company could not obtain the necessary financing to construct the improvements; and that such representation was made as a material inducement to appellee to allow Brunson-Shea Investment Company to act as appellee's agent in executing the earnest money contract.

Appellant objected to the submission of these issues, among other reasons, (1) because there was no evidence to support their submission, and (2) because affirmative answers to the issues would only establish an oral express trust or an oral contract to convey land in violation of the Texas Trust Act or the Statute of Frauds. A motion to disregard the findings and for judgment that appellee take nothing urging the same grounds was denied by the trial court.

The judgment entered in this cause recites:

"* * * that a constructive trust existed in favor of Plaintiff Powell Electrical Manufacturing Company at the time Lawrence Newton Shea and Benjamin J. Brunson acquired title in and to Lot 131, South Houston Gardens No. 6, Harris County, Texas, by virtue of a breach of a fiduciary relationship and also by virtue of a false and fraudulent promise made by Lawrence Newton Shea which was relied upon by Plaintiff and was a material inducement to Plaintiff to act, there being no intention by Lawrence Newton Shea to carry out such promise at the time it was made."

■ Article 7425b–7, Vernon's Ann.Civ. St., The Texas Trust Act, requires an express trust to be in writing to be valid. It does not apply to invalidate constructive trusts. Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256 (1951). The Statute of Frauds, Article 3995, V.A.C.S., provides in part that no action shall be brought upon a contract for the sale of real estate or the lease thereof unless the promise or agreement upon which such action shall be brought shall be in writing and signed by the party to be charged. Consolidated Gas & Equipment Co. of America v. Thompson, 405 S.W.2d 333 (Tex.1966).

■ One method by which a constructive trust is created is by breach of a fiduciary relationship. Fitz-Gerald v. Hull, supra; Consolidated Gas & Equipment Co. v. Thompson, supra. In Thompson, the Supreme Court cites the opinions written on constructive trusts by that court since the adoption of the Texas Trust Act: Thigpen v. Locke, 363 S.W.2d 247 (Tex.1962); Gaines v. Hamman, 163 Tex. 618, 358 S.W. 2d 557 (1962); Omohundro v. Matthews, 161 Tex. 367, 341 S.W.2d 401 (1960); Smith v. Bolin, 153 Tex. 486, 271 S.W.2d 93 (1954); and Fitz-Gerald v. Hull, 150 Tex. 39, 237 S.W.2d 256 (1951). The court then states:

"Our holdings above cited are to the effect that for a constructive trust to arise there must be a fiduciary relationship before, and apart from, the agreement made the basis of the suit. Such is our holding here. As stated, the fact that one businessman trusts another, and relies upon his promise to carry out a contract, does not create a constructive trust. To hold otherwise would render the Statute of Frauds meaningless.

"The usual cases of fiduciary relationship have been attorney-and-client, partners, close family relationships such as that of parent-and-child, and joint adven-

turers, particularly when there is an agreement among the joint adventurers to share financial gains and losses. This Court in Gaines v. Hamman, supra, as well as in Thigpen v. Locke, supra, recognized that a fiduciary relationship could arise outside of those relationships listed above when, over a long period of time, the parties had worked together for the joint acquisition and development of property previous to the particular agreement sought to be enforced. * * * "

■ This record does not present evidence to support a finding that a fiduciary relationship had arisen between Shea and appellee "before, and apart from, the agreement made the basis of the suit." There is no showing that "over a long period of time, the parties had worked together for the joint acquisition and development of property previous to the particular agreement sought to be enforced."

Appellee particularly relies on Omohundro v. Matthews, supra. In Omohundro the court found a fiduciary relationship because the parties were joint adventurers (341 S.W.2d 401, 409). This is not such a case. Had this transaction worked out as planned, presumably all parties would have profited. There would have been mutual profit, but not shared profits. Appellee would have secured its plant without a major outlay of capital, as well as the tax advantages sought. Appellant and his associates would have realized a substantial profit on the sale to the Profit Sharing Trust, or by the rentals due under the lease. Appellee was not obliged to exercise its option to purchase. The rental to be paid for the use of the premises was fixed so that based on the cost of construction it might be reduced, but it could not be increased. Appellant and his associates assumed such risks of loss as are apparent in the transaction. This was an arm's length business transaction and was not a joint adventure creating a fiduciary relationship. Brown v. Cole, 155 Tex. 624, 291 S.W.2d 704 (1956).

■ The jury found that Shea represented to appellee that the earnest money contract would be assigned to it in the event the necessary financing was not available, and that this representation was made as a material inducement to appellee to allow Brunson-Shea Investment Company to act as appellee's agent in executing the earnest money contract. The trial court included in the judgment a finding that the representation was false when made. Appellant objected to the submission of Special Issue No. 3, and pointed out that the issue was immaterial in that the ultimate issue was whether or not "at the time the alleged representation was allegedly made Brunson and Shea did not intend at that time to keep the promise contained in such alleged representation."

The mere failure to discharge a promise of something to be done in the future is not fraud. Talley v. Howsley, 142 Tex. 81, 176 S.W.2d 158 (1943).

The rule is stated in Turner v. Biscoe, 141 Tex. 197, 171 S.W.2d 118 (Tex.Com. App.1943):

"A person's intention is a matter of fact. When a promise is made the promisor expressly or by necessary implication states that he then has a present intention to perform, and if such intention does not actually exist at that time, a false statement of fact has been made upon which fraud may be predicated."

The special issue was immaterial in the absence of a finding that at the time the promise was made the promisor did not intend to perform. The objection made was sufficient to point out to the trial court the absence of a necessary subsidiary issue. Because of the objection there can be no presumed finding in support of the judgment. Yellow Cab Company v. Smith, 381 S.W.2d 197 (Tex.Civ.App.—Waco 1964, writ ref., n. r. e.); Super-Cold Southwest Co. v. Chowning, 248 S.W.2d 504 (Tex.Civ. App.—Dallas 1952, writ ref., n. r. e.). Unless the evidence conclusively establishes

that Shea did not intend to perform as promised at the time he made the promise the trial court was not authorized to make such a finding. Rule 279, Texas Rules of Civil Procedure.

Appellee contends that there was no evidence to raise an issue of fact that Shea had no intention to keep his promise to convey at the time he made it, if in fact such a promise was made as found by the jury. Shea denied making the promise. He testified that he and his partners intended to buy the land for an investment whether or not the transaction with appellee was consummated. Brunson testified that when Shea told him about the property, they agreed to buy it as an investment. The jury could reason that this conversation occurred before appellee decided on the tract of land as the site for their plant. He testified that Shea did not tell him of the alleged agreement to convey. Friedman testified that the land was purchased as an investment, and that he did not know that appellee was interested in it. He listed the property with an agent for sale. He testified that the listing was in January, 1965. Inferences from this testimony raise an issue of fact as to Shea's intention at the time of his promise to reconvey. Texas & N. O. Ry. Co. v. Thompson, 1 S.W.2d 938, aff'd 12 S.W.2d 963 (Tex.Com.App.1929); Atchison, Topeka & Santa Fe Ry. Co. v. Skeen, 174 S.W. 655 (Tex.Civ.App.—El Paso 1915, error ref.); Stone v. Williams, 358 S.W.2d 151 (Tex.Civ.App.—Houston 1962, writ ref., n. r. e.).

Appellant contends that by failing to request the necessary issue on the intent of the promisor to perform at the time the promise was made, the appellee has waived the ground of recovery based on fraud, citing many cases including Clark v. National Life & Accident Ins. Co., 145 Tex. 575, 200 S.W.2d 820 (1947), and First American Life Ins. Co. v. Slaughter, 400 S.W.2d 590 (Tex.Civ.App.—Houston 1966, writ ref., n. r. e.). They reason that the case should

be reversed and rendered. Here the ground of recovery was submitted to the jury. The submission was incomplete and defective. In such a case the proper judgment is to reverse and remand for a new trial. Praetorian Mutual Life Insurance Co. v. Sherman, 455 S.W.2d 201 (Tex.1970); Hicks v. Matthews, 153 Tex. 177, 266 S.W.2d 846 (1954).

The definition of "fiduciary relationship" contained in the charge was erroneous, and was submitted over objections of appellant pointing out its defects. A definition relating such elements of a confidential relationship as set out in Consolidated Gas & Equipment Co. v. Thompson, supra, and Thigpen v. Locke, 363 S.W.2d 247 (Tex. 1965), and as are pertinent under the facts developed, should be given in the event of a new trial.

Special Issue No. 3 was subject to the objection made by appellant that it constituted a comment on the weight of the evidence in that it assumed as a fact that Brunson-Shea Investment Co. acted as appellee's agent in executing the contract, and that appellee allowed Brunson-Shea Investment Co. to execute the contract. This constitutes harmful error. Johnson v. Zurich General Accident & Liability Ins. Co., 146 Tex. 232, 205 S.W.2d 353 (1947); Hutson v. Chambless, 157 Tex. 193, 300 S.W.2d 943 (1957); Owen Development Co. v. Calvert, 157 Tex. 212, 302 S.W.2d 640 (Tex.1957).

█ There is no evidence that Brunson-Shea Investment Company received $4,450.-00 from appellee for the purpose of paying for the earnest money deposit on the land in question with the understanding that appellee would be the owner of the land if no construction financing could be obtained by Brunson and Shea. The trial court erred in submitting Special Issue No. 4 over proper objections by appellant.

Reversed and remanded.