Roland D. SMITH, Petitioner,

v.

Alan BALDWIN, d/b/a Alan Baldwin,
Builder, Respondent.

No. B–8920.

Supreme Court of Texas.

Dec. 31, 1980.

Rehearing Denied March 4, 1981.

Thomas E. Tiemann, Kirk Kuykendall, Austin, for petitioner.

Robinson, Felts, Starnes & Latting, James Meyers and Joseph H. Hart, C. Robert Dorsett, Austin, for respondent.

STEAKLEY, Justice.

On September 9, 1976, Alan Baldwin, d/b/a Alan Baldwin, Builder, contracted to build a house for Roland Smith. On the same day, Smith executed to Baldwin a promissory note for $31,300, payable within 180 days, Baldwin agreeing to pay all interim interest. Baldwin assigned the note to Mutual Savings Institution (Mutual) in order to obtain interim financing. The permanent financing was to be supplied by the Veteran's Administration (V.A.) which required a final V.A. inspection report prior to approval of the permanent loan. Smith began moving into the house prior to the date scheduled for completion. On March 28, 1977, the house remained uncompleted and unapproved by the V.A. and Smith, who had previously occupied the house, ordered Baldwin to leave the premises. In October, 1977, Baldwin attempted to obtain V.A. approval but this was refused on the basis of construction defects and a final V.A. inspection report and approval was not obtained.

Baldwin brought suit against Smith on the contract and the note, seeking the foreclosure of his lien and claiming additional expenses in construction of the house, and for interference with its completion. Smith generally denied and counterclaimed under the Deceptive Trade Practices Act.[1] He alleged in his Fourth Amended Cross-Action that, among other things, Baldwin failed to obtain a V.A. inspection compliance report.[2] Smith also sought attorney's fees on two theories: one based on the assignment to him of the rights of Mutual Savings Association under Smith's interim financing note; the other under the DTPA.

After a non-jury trial, the trial court rendered a take-nothing judgment against Baldwin. On the counterclaim of Smith, the court awarded him a recovery of $4,400 as actual damages sustained under the DTPA which consisted of the sum of $1,500 as the cost of remedying the defects in the house and the additional sum of $2,900 in interim interest, included in Smith's permanent financing note. The trial court trebled damages, awarding a total sum of $13,200. The court further awarded Smith the sum of $10,000 as reasonable attorney's fees[3] and additional attorney's fees in the sum of $2,500 in the event of an appeal through the Court of Civil Appeals, the sum of $1,000 in the event of the filing of an application for writ of error, and a final sum of $500 in the event writ of error is granted.

The trial court filed findings of fact describing numerous construction defects. Further, that:

Baldwin has never obtained a final inspection report which shows full and final compliance with V.A. requirements.

The court found, however, that as a matter of fact the contract was substantially performed and this conclusion has not been challenged by Smith.

Upon appeal by Baldwin the Court of Civil Appeals held that the unchallenged finding of substantial performance precluded the application of the DTPA. The court reversed the judgment of the trial court that had awarded Smith treble damages for interim interest and attorney's fees, and treble damages for the cost of correcting the defects in the house, and reform the judgment so as to award Smith the sum of $1,500 as the cost of remedying the defects

---

1. Tex.Bus. & Com.Code Ann. § 17.41 et seq. All statutory references are to the DTPA, unless otherwise indicated.

2. Some of the alleged deceptive acts occurred after the effective date of the 1977 amendments to the DTPA; neither party contends however, that they are applicable to the cause. See *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169 (Tex.1980).

3. Section 17.50. Relief for Consumers

"(a) A consumer may maintain an action if he has been adversely affected by any of the following:

"(1) the use or employment by any person of an act or practice declared to be unlawful by Section 17.46 of this subchapter;

"(b) In a suit filed under this section, each consumer who prevails may obtain:

"(1) three times the amount of actual damages plus court costs and attorneys' fees reasonable in relation to the amount of work expended; . . . ."

in the house. 586 S.W.2d 624. We reverse the judgment below and render judgment as later set forth.

Smith, our petitioner, contends that substantial performance of a contract does not preclude liability under § 17.46(b)(7) of the DTPA which states that the term "false, misleading or deceptive acts or practices" includes:

(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

Baldwin argues that to hold builders liable for treble damages and attorney's fees notwithstanding a substantial performance of the building contract places an unreasonable burden on the builder. Whether this is so or not, the Legislature in the DTPA did not provide that substantial performance is a defense to an action under the statute and directed further that "This subchapter shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions and breaches of warranty and to provide efficient and economical procedures to secure such protection." § 17.44.

█ It is our view that the doctrine of substantial performance is not relevant to the statutory cause of action under the DTPA asserted by Smith in his counterclaim. The portions of Smith's Fourth Amended Cross-Action alleging that Baldwin had violated the DTPA by misrepresenting that the house he would build for Smith would meet the requirements for a final V.A. inspection compliance report are distinct from the pleadings of Smith complaining of Baldwin's failure to fulfill his contractual commitments.[4] The judgment of the trial court awarding damages to Smith under the DTPA is not based on findings of a contract breach; the judgment is based on the misrepresentations of

Baldwin as to the quality and standard of the goods and services in building the house, i. e., that the house when completed would qualify for V.A. approval so that Smith could obtain permanent financing.

Baldwin further argues that apart from the substantial performance defense, there has been no violation of § 17.46(b)(7) because: (1) Section 17.46(b)(7) is applicable to representations of quality of *existing* goods or services, not to representations of quality concerning goods or services not yet in existence; (2) false representations concerning future goods fall within subdivision (9), which requires intent; and (3) if subdivision (7) is applicable to the condition of goods and services in the future, there is a requirement of intent not to provide them as represented.

Section 17.46(b) declares that nine acts constitute false, deceptive or misleading practices with respect to goods and services.[5] The thrust of Baldwin's argument is that only two, subdivisions (9) and (10), are applicable to representations made concerning the *future* quality of goods or services. These subdivisions provide:

(9) advertising goods or services with intent not to sell them as advertised;

(10) advertising goods or services with intent not to supply a reasonable expectable public demand unless the advertisements disclosed a limitation of quality;[6]

It is noted that these subdivisions expressly require an intent not to provide goods and services as advertised and it is Baldwin's position that these are applicable here and that there is no evidence that he did not intend to provide the goods and services he promised.

Black's Law Dictionary (5th ed. 1979) defines the verb "advertise" as follows:

Advertise. To advise, announce, apprise, command, give notice of, inform, make known, publish. On call to the public

---

4. The remedy of breach of contract and those provided in the DTPA are cumulative and not mutually exclusive. Section 17.43; cf. *Garcia v. Texas Instruments, Inc.*, 610 S.W.2d 456 (Tex.1980).

5. Section 17.46(b)(1), (2), (4), (5), (6), (7), (8), (9), (10).

6. There are no reported Texas cases construing these subdivisions.

attention by any means whatsoever. Any oral, written, or graphic statement made by the seller in any manner in connection with the solicitation of business and includes, without limitation because of enumeration, statements and representations made in a newspaper or other publication or on radio or television or contained in any notice, handbill, sign, catalog, or letter, or printed on or contained in any tag or label attached to or accompanying any merchandise.

*Id.* at 50; see *G. C. Murphy Co. v. Lack,* 404 S.W.2d 853, 856 (Tex.Civ.App.1966, writ ref'd n. r. e.); and *State v. Guardian Foundation of Texas,* 128 S.W.2d 880, 882 (Tex. Civ.App.1939, no writ).

■ It is apparent that a primary purpose of subdivisions (9) and (10) is the prevention of "bait advertising," a practice by which a seller seeks to attract customers through advertising products at low prices which he does not intend to sell in more than nominal amounts. The customers who respond to the advertisement are switched to another product or service, at a higher price. D. Bragg, P. Maxwell, J. Longley, Texas Consumer Litigation, § 3.14 at 89 (1978). Maxwell, *Public and Private Rights and Remedies Under the Deceptive Trade Practices—Consumer Protection Act,* 8 St. Mary's L.J. 617, 627 (1977).[7]

■ There is nothing in the record which suggests that Baldwin's representations involved advertising, much less "bait advertising." See *Lack, supra*; Pitofsky, *Beyond Nader: Consumer Protection and the Regulation of Advertising,* 90 Harv.L.Rev. 661 (1977). The representations concerning compliance with V.A. standards and regulations and the ability to complete the house as scheduled were not marketing devices designed to induce the public to patronize Alan Baldwin, Builder. Smith was not enticed to enter into a contractual relationship because of a public notice drawing atten-

tion to Baldwin's capabilities as a contractor. Neither subdivisions (9) nor (10) are intended to apply to the representations at issue in this cause.

Baldwin also contends that these are the only provisions of § 17.46(b) dealing with statements of future quality. If this position is followed to its logical conclusion, there would be no liability under § 17.46(b) for false, misleading or deceptive acts with respect to the future quality of goods or services; and it would further follow that relief from such acts must rest on the general provisions of § 17.46(a).[8] Baldwin thus argues that Smith is not entitled to any relief since he has neither alleged nor proved a violation of § 17.46(a).

■ Excluding the provisions on advertising previously discussed, there are seven other subdivisions which declare unlawful specific practices dealing with goods and services. Goods and services are defined by the DTPA:

§ 17.45. Definitions

As used in this subchapter:

(1) "Goods" means tangible chattels or real property purchased or leased for use.

(2) "Services" means work, labor, or service purchased or leased for use, for other than commercial or business use, including services furnished in connection with the sale or repair of goods.

There is no language in these definitions or in § 17.46(b) to indicate that the provisions were intended to be limited to existing goods and services. Goods are frequently scheduled to be manufactured at a later date and service contracts routinely involve future performance. It would be contradictory to the explicit legislative intent expressed in § 17.44 of the DTPA—see *Woods v. Littleton,* 554 S.W.2d 662 (Tex.1972)—to hold that consumers who have been misled by misrepresentations on future quality are

---

7. The Uniform Deceptive Trade Practices Act § 2(a)(9), (10) (1964, Act revised 1966) contains an identical provision and the comment thereunder expressly states that the purpose of these subdivisions is to deal with bait advertising.

8. Section 17.46(a) provides:

(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

not entitled to protection from the specific provisions on goods and services, but instead must seek recovery under the general language of § 17.46(a). See also *Southwestern Inv. Co. v. Mannix,* 557 S.W.2d 755, 769 (Tex.1977); *Anderson v. Penix,* 138 Tex. 596, 161 S.W.2d 455, 458–59 (1942).

This is further exemplified in the 1979 amendments to the DTPA. Section 17.46 was amended to add subsection (d) as follows:

> (d) For the purposes of the relief authorized in Subdivision (1) of Subsection (a) of Section 17.50 of this subchapter, the term "false, misleading, or deceptive acts or practices" is limited to the acts enumerated in specific subdivisions of Subsection (b) of this section.

This amendment measures a private cause of action for violations of the broad prohibitions of § 17.46(a) by those specifically enumerated in § 17.46(b). See *Pennington v. Singleton,* 606 S.W.2d 682 (Tex.1980); Goodfriend & Lynn, *Of White Knights and Black Knights: An Analysis of the 1979 Amendments to the Texas Deceptive Trade Practices Act,* 33 Sw.L.J. 941, 974 (1979); Comment, *An Analysis of the 1979 Texas Deceptive Trade Practices Act and Possible Ramifications of Recent Amendments: Is the Act Still Consumer Oriented?* 11 St. Mary's L.J. 885, 897 (1980).

Baldwin submits further that if subdivision (7) is applicable to representations of the condition of goods and services in the future, then it was Smith's burden to prove that he did not intend to provide the goods or services as represented. As support for this position, cases are cited which hold there must be an intent not to perform at the time a statement as to future acts is made before an action for false statements or fraud can be maintained. *Jeffcoat v. Phillips,* 534 S.W.2d 168, 171 (Tex.Civ.App. 1976, writ ref'd n. r. e.); *Friedman v. Powell Elec. Mfg. Co.,* 456 S.W.2d 758, 763 (Tex. Civ.App.1970, no writ).

■ The DTPA does not represent a codification of the common law. A primary purpose of the enactment of the DTPA was to provide consumers a cause of action for deceptive trade practices without the burden of proof and numerous defenses encountered in a common law fraud or breach of warranty suit. *Woo v. Great Southwestern Acceptance Corp.,* 565 S.W.2d 290, 298 (Tex.Civ.App.1978, writ ref'd n. r. e.); Texas Consumer Litigation *Introduction, supra.*

■ Subdivision (7) contains no requirement of proof of intent. By contrast, this is found in subdivisions (9) and (10), and the words "knowingly" and "fraudulently" appear in subdivisions (13) and (17) respectively.[9] The Legislature could readily have imposed an intent requirement in subdivision (7) but did not do so. *Pennington v. Singleton, supra.* When the Legislature has carefully employed a term in one section of a statute, and has excluded it in another, it should not be implied where excluded. *Bott v. American Hydrocarbon Corp.,* 458 F.2d 229, 233 (5th Cir. 1972), accord, *Federal Trade Comm'n v. Sun Oil Co.,* 371 U.S. 505, 514–15, 83 S.Ct. 358, 364–65, 9 L.Ed.2d 466, 476 (1963); see Texas Consumer Litigation, § 3.02, *supra.*

■ The legislative history of the 1979 amendments supports the conclusion that the Legislature has not intended to require an intent to deceive or mislead in subdivision (7) actions. As originally, filed in the Senate, the 1979 amendments included the word "knowingly" in subdivision (7). It has been pointed out that this requirement was deleted prior to Senate passage of the DTPA amendment. Maxwell, *The 1979 Amendments to the Deceptive Trade Practices—Consumer Protection Act,* in Texas Consumer Law For The General Practitioner A–25 (State Bar of Texas 1979). The

---

**9.** Section 17.46(b)(13), (17) provides:

(13) knowingly making false or misleading statements of fact concerning the need for parts, replacement, or repair service;

(17) advertising of any sale by fraudulently representing that a person is going out of business; . . .

Subdivisions (22) and (23), added by amendment in 1979, also require a culpable mental state.

deletion of a provision in a pending bill discloses the legislative intent to reject the proposal. *Grasso v. Cannon Ball Motor Freight Lines*, 125 Tex. 154, 81 S.W.2d 482, 485 (1935). In light of the facts that the DTPA was not designed to be a codification of the common law, the absence of a mental state element in § 17.46(b)(7) and its inclusion in other subdivisions, the legislative history of the 1979 amendments, and in keeping with the mandate of liberal construction, we hold as in *Pennington v. Singleton, supra*, that § 17.46(b)(7) does not require proof or a finding of intentional misrepresentation before the sanctions of the DTPA are imposed. This applies with equal force to representations of quality of both existing and future goods.

Under the terms of the building contract, Baldwin also agreed to pay interest on the interim financing. Baldwin paid the interim interest to Mutual until the date on which he was obligated to complete the house. Thereafter, there arose an item of $2,900 in interim interest accruing until the note was permanently refinanced with Mutual. This sum of interest was included in the permanent financing note and thus the payment of this became the obligation of Smith. The trial court found the $2,900 to be actual damages which added to the $1,500 awarded for the cost of remedying the defects in the house totaled $4,400 actual damages. This sum was trebled under § 17.50(b)(1), a total of $13,200.

Baldwin states that any obligation to pay interim interest accruing after the initial 180 day period of the note is based on the express language of the mechanic's lien contract.[10] He argues that his liability, if any, is contractual; that it does not result from a deceptive trade practice; and that his failure to pay interest on a note should not be subject to the DTPA.

■ The Court of Civil Appeals held that Baldwin was contractually liable for the $2,900 interest but refused Smith recovery therefor on two grounds: first, Smith prevented Baldwin from completing the house and is therefore not entitled to damages brought about by his own wrong; second, to allow Smith to occupy the house for ten months without paying rent would constitute unjust enrichment. Both parties conceded and the trial court found, as a matter of fact, that the reasonable rental value of the house for the ten months it was occupied by Smith was $350 per month. Since the reasonable rental value for the ten month period, $3,500, exceeded the $2,900 in interim interest, the Court of Civil Appeals disallowed the interest award in such sum. We agree that Baldwin is entitled to an offset of the rental sum.

■ Smith contends that in any event the interim interest damage of $2,900 should be trebled as required by the DTPA and the rental value of $3,500 offset against the trebled sum of $8,700. We disagree. The actual damages suffered under § 17.50(b)(1) are determined by the total loss sustained by the plaintiff as a result of the deceptive trade practices. Allowable set-offs will necessarily reduce the actual damages and hence the sum subject to trebling. The net damage suffered by Smith that is required to be trebled is the sum of $900, i. e., a total of $2,700. The sum of $900 results from adding the sums of $2,900 interim interest and $1,500 representing the cost of remedying the defects in the house, less the reasonable rental value of $3,500.

We turn now to the attorney's fees of $10,000 awarded by the trial court, together with the fees awarded in event of appeal. The award of these fees was obviously predicated on the provisions of the DTPA. The Court of Civil Appeals reversed this award on the basis of the ruling that Smith

---

10. The contract provided in pertinent part:
   . . . CONTRACTOR ALAN BALDWIN does hereby expressly agree to pay to THE MUTUAL SAVINGS INSTITUTION any and all interest earned from the endorsed Interim Construction Note made a part hereof this transaction; and further, CONTRACTOR ALAN BALDWIN does hereby expressly agree to hold ROLAND D. SMITH, a Single Man, harmless and absolutely free from liability for said interest earned during the existence of this loan and for all costs incurred above the contract price of $31,300.00.

in his counterclaim did not establish a cause of action under the DTPA. The Court of Civil Appeals also overruled Smith's cross-point asserting his entitlement to reasonable attorney's fees under and by reason of the assignment to him by Mutual of his (Smith's) note for $31,300. In his motion for rehearing before the Court of Civil Appeals Smith's only assignment of error specifically mentioning the action of the court with respect to attorney's fees asserted:

### Assignment No. Seven

The Court erred in overruling Appellee's cause of action for attorney fees since Appellee had acquired such right for a valuable consideration.

Smith's statement and argument under this point pertained solely to the assignment by Mutual to Smith of Smith's original note to Baldwin, e. g.:

Mutual transferred to Smith its causes of action against Baldwin. Smith *bought* these causes of action by renewing and extending the note and paying accrued interest.

Smith's point of error in his application for writ asserted:

The Court of Civil Appeals and trial court erred in denying Petitioner's cause of action for attorney fees which cause of action had been assigned to him.

His argument thereunder again pertained only to his claim for attorney's fees as assignee from Mutual.

Baldwin, respondent here, argues that we have no jurisdiction to consider "The refusal of the Court of Civil Appeals to award attorney's fees under § 17.50 of the Texas Deceptive Trade Practices Act." We agree.

It is settled that a point of error in the Motion for Rehearing filed in the Court of Civil Appeals complaining of a matter determined by that court is prerequisite to our jurisdiction to consider and act thereon. See *Wallace v. Scrogum*, 372 S.W.2d 941 (Tex.1963); *Kimbrough v. Walling*, 371 S.W.2d 691 (Tex.1963); *East Texas*

*Motor Freight Lines v. Loftis*, 148 Tex. 242, 223 S.W.2d 613 (1949); *Moore v. Dilworth*, 142 Tex. 538, 179 S.W.2d 940 (1944); see also *Life Ins. Co. of N. Am. v. First Nat'l Bank of Fort Worth*, 464 S.W.2d 362 (Tex. 1971).

With reference then to the point raised by Smith in his Motion for Rehearing in the Court of Civil Appeals, and in his application for writ of error, i. e., that he was entitled to attorney's fees under the assignment to him by Mutual, we agree with the ruling and writing of the Court of Civil Appeals, 586 S.W.2d 624 at 633, denying this claim, and therefore pretermit further discussion.

The judgments below are reversed and judgment is rendered for Smith, our petitioner, in the sum of $2,700. One-half of the costs in the trial court and on appeal are adjudged against petitioner and one-half are adjudged against respondent.

GREENHILL, C. J., dissented and filed opinion in which POPE and McGEE, JJ., join.

GREENHILL, Chief Justice, dissenting.

My main concern with the Court's opinion is that the Court comes very close to making a simple breach of contract action into a treble damage deceptive trade practice action.

The question, as I understand it, is not whether the builder breached his contract. Though the house was ninety-eight percent completed, and there was substantial compliance, I can see an action for actual damages for breach of the contract. The plaintiff did not seek recovery for common law fraud or fraudulent misrepresentations; i. e., fraud in making a representation which the defendant did not intend to perform or keep when he made it.

As set out below, as I read the Deceptive Trade Practices Act,[1] it states that where there is a present representation that goods and services *are* of a particular type or

---

1. Texas Deceptive Trade Practices—Consumer Protection Act, Texas Business and Commerce Code § 17.41 et seq., hereinafter referred to as the DTPA.

quality, and they *are not*, then there is a statutory violation. The Court's opinion, in my view, enlarges the word "are" contained in section 17.46(b)(7) to "are, or will be in the future."

The "misrepresentation" relied upon by the Court is that Baldwin would obtain a V.A. inspection compliance report. This representation was not of the existing nature or quality of the house. There is no finding of fact or conclusion of law that Baldwin ever misrepresented the existing or present state of affairs. The representation relied on by the Court was made by Baldwin at the time that the parties entered into the contract and concerns the *future* nature or quality of Baldwin's work. The representation may constitute a warranty provision of the contract. However, Smith has waived[2] the breach of warranty provision of the Deceptive Trade Practices Act, section 17.50(a)(2).

Smith relies entirely on misrepresentations under section 17.46(b)(7). This section of the act is concerned with present representations of the existing nature or quality of goods or services. One argument which Smith makes is that Baldwin did not intend to comply with the contract and thus misrepresented his intent with respect to the nature and quality of the house to be built. Section 17.46(b)(7) speaks of "representing that *goods* or *services* are of a particular standard" [emphasis added] and does not address representations of *intent* about goods or services. The Court's opinion states that intent is not relevant, as does *Pennington v. Singleton*, 606 S.W.2d 682 (Tex.1980).

The interpretation given to section 17.-46(b)(7) by the Court rewrites the statute to state: representing that goods or services are—*or will be*—of a particular standard or that goods are—*or will be*—of a particular

style or model. The Court's rationalizations for this interpretation are the legislative directive to construe the act liberally and the entirety of the legislative scheme.

This reasoning ignores at least two important factors in the legislative scheme. First, the Legislature indicated that there are some acts or practices which might give the consumer a cause of action for damages but which would *not* be violations of the DTPA. Section 17.43 provides in pertinent part:

> A violation of a provision of law other than this subchapter is not in and of itself a violation of this subchapter. An act or practice that is a violation of a provision of law other than this subchapter may be made the basis of an action under this subchapter if the act or practice is proscribed by a provision of this subchapter or is declared by such other law to be actionable under this subchapter....

I *do not* believe that a breach of a contract specification is a violation of the DTPA. There is nothing either in the DTPA itself or the Texas Business and Commerce Code, article 2, which so provides. Every breach of contract is not or should not constitute a misrepresentation, so as to bring it under section 17.46(b)(7). For example, a consumer contract with a department store to deliver a white refrigerator has been breached when a yellow refrigerator is delivered. That breach is neither a breach of warranty nor a deceptive trade practice. Or, "A" borrows $5,000 and represents that he will pay it back with interest. He repays only $4,000. Is the representation or promise to repay, when breached, a deceptive trade practice?

Second, the Legislature clearly distinguishes between a breach of warranty and other acts such as misrepresentations in sec-

---

**2.** Smith makes no argument and has no points of error in this Court on breach of warranty. He mentions this theory only once in his application for writ of error. That reference is in one sentence in the summary of his argument on another point. Smith also never specifically pleaded breach of warranty as a violation of the Deceptive Trade Practices Act. His fourth

amended pleading specifically alleges breaches of the contracts between the parties and that such breaches constitute a deceptive trade practice under section 17.46, plus alternative allegations of common law misrepresentation and "contractural [*sic*] damages."

tions 17.44[3] and 17.50(a).[4] The courts should not now disregard the distinctions between breach of contract or breach of warranty and misrepresentation.

The purpose of the DTPA was to cut across many areas of the common law to make it easier for consumers to recover in specified instances. However, in my opinion, a breach of contract specifications was not intended by the Legislature to be a violation of the DTPA. That, as I construe it, is what this opinion holds; and I dissent from the holding.

POPE and McGEE, JJ., join in this dissent.

**3.** Section 17.44 provides:

This subchapter shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection.

**4.** Section 17.50(a) provides:

(a) A consumer may maintain an action if he has been adversely affected by any of the following:

(1) the use or employment by any person of an act or practice declared to be unlawful by Section 17.46 of this subchapter;

(2) a failure by any person to comply with an express or implied warranty;

(3) any unconscionable action or course of action by any person; ....