**CITY OF DALLAS et al., Appellants,**

v.

**George PIERSON, Appellee.**

**No. 17375.**

Court of Civil Appeals of Texas, Dallas.

Jan. 16, 1970.

On Remittitur Jan. 30, 1970.

Robert E. Burns, Burford, Ryburn & Ford, Dallas, for appellants.

Thomas A. Blakeley, Jr., Grady, Johnson, Smith & Blakeley, Dallas, for appellee.

DIXON, Chief Justice.

Appellants City of Dallas and R. J. Range have appealed from a judgment against them in a damage suit filed by appellee George Pierson, who was injured when he was struck by a bus owned by the City and being operated by its employee, Range. The City owns the Dallas Transit System, a public transportation facility.

Aetna Casualty & Surety Company intervened seeking to recoup the sum of $12,016.79, the amount of workmen's compensation benefits paid to Pierson.

A jury found that (1) Range failed to keep a proper lookout, (2) which failure was a proximate cause of the accident. To an inquiry whether the jury found from a preponderance of the evidence that Pierson failed to keep a proper lookout, the answer was "No". The jury found $30,000 damages for impaired capacity to work in the future, for past and future physical and mental pain and suffering, and for past medical, hospital, doctors and drug expense. In addition the jury returned a verdict for $4,000 for future medical, hospital, doctors and drug expense.

Based on the jury verdict judgment was rendered in favor of appellee Pierson for $34,000. Out of this sum Aetna Casualty & Surety Company was allowed $12,016.79 under its subrogation rights.

The Transit Service maintains parking lots opposite each other on the north side and on the south side of Elm Street. Range, a night time employee, was one of several employees whose duty it was to service the buses in preparation of their going back onto their runs the next day.

At about 7:30 o'clock on the night of November 21, 1966 Range drove a bus from the south parking lot out into Elm Street where he made a left turn. He then proceeded west on Elm Street toward an opening between buses in the same block on the north parking lot. At this point he made a right turn across a sidewalk in order to proceed through the opening onto the north parking lot, his purpose being to place the bus on a wash rack. Another bus was a short distance ahead of him and still another bus a short distance back of him. They also were being taken to the north parking lot to be serviced. This was a regular procedure followed in servicing all the buses which had been parked on the south parking lot at night.

At the time of the accident appellee Pierson, 66 years of age, was employed by Stevenson Advertising Company, which leased advertising space inside and outside the buses, and subleased space to advertisers. Pierson also worked at night. He was one of several employees whose job it was to change advertising boards and cards inside and outside the buses.

On the night of the accident he had detached a sign from the side of a bus on the north parking lot and was carrying the sign to a storage building adjacent to the west side of the north parking lot. This sign was 12 feet long, 2½ feet wide and was made of masonite ⅛th of an inch thick. Pierson says that he was carrying the sign with his right hand under the sign with the sign resting on his right arm and

the top of it balanced against his right shoulder. It was while he was walking west on the sidewalk carrying the sign in front of the opening between parked buses on the parking lot that he was struck by the left front of the bus operated by Range. He sustained serious injuries.

In their first point of error appellants complain of the court's refusal to submit their requested special issue in regard to unavoidable accident. Their position is that if the sign itself blocked the bus driver's vision they would be entitled to a submission of the unavoidable accident issue.

 We are of the opinion that appellants' first point should be overruled. We find no evidence in the record that the sign obscured the bus driver's vision. The testimony of the driver himself negates appellants' theory. He testified as follows:

"Q Did you ever see Mr. Pierson before the bus came in contact with the man?

A No.

Q *Was there anything to prevent your vision or to obstruct your vision on where the man was?*

A *No.*

\* \* \* \* \* \*

Q Yes. Well, how do you account for the fact that Mr. Pierson apparently was struck by the left corner of your bus?

A Because that's when I was aware that I had run over something. Everything happened from the rear, nothing happened from the front because I was going very slow and, *as you know, that those buses have a real good view.*" (Emphasis ours.)

Range also testified that he knew there were employees working on the parking lot changing the signs, that he had seen pedestrians using the sidewalk many times, and that this was the place where it was intended for pedestrians to walk. The

headlights of the bus were on at the time of the accident and there were lights scattered throughout the parking lot. Pictures of the site of the accident show very plainly that there were no obstructions to vision between the street where the bus was proceeding and the sidewalk where Pierson was walking. In our discussion of appellants' second point we shall point out that there was nothing to obstruct appellee Pierson's vision to his left.

Appellants cite Foremost Dairies, Inc. v. McClung, 421 S.W.2d 178 (Tex.Civ.App., Dallas 1967, writ ref'd n. r. e.), in which a majority of our court reached the conclusion that the trial court's refusal to submit an issue on unavoidable accident was reversible error. But the facts in *Foremost* distinguish it from the case now before us. In *Foremost* there were swinging doors between the operator of a dolly truck and the injured plaintiff. A majority of the court felt that these swinging doors may have obscured the vision of the operator of the dolly so that he could not see the plaintiff on the other side of the doors—a situation which raised the issue of unavoidable accident. But nothing comparable to that situation is present in this case. There is no evidence that the vision of the driver of the bus was in any way obstructed, or that something other than the negligence of any of the parties caused Pierson's injuries.

In *Foremost* we reviewed numerous cases, pro and con, dealing with the question of unavoidable accident, which review we need not repeat. However in support of our holding here we cite the following cases: Hicks v. Brown, 136 Tex. 399, 151 S.W.2d 790 (1941); Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407 (1943); Nussbaum v. Anthony, 214 S.W.2d 686 (Tex.Civ.App., Amarillo 1948, writ ref'd n. r. e.); Hernandez v. Heldenfels, 374 S.W.2d 196, 201 (Tex.Sup.1964); Continental Oil Co. v. Lindley, 382 S.W.2d 296, 304 (Tex.Civ. App., Houston 1964, writ ref'd n. r. e.); Meinen v. Mercer, 390 S.W.2d 36, 40 (Tex. Civ.App., Corpus Christi 1965, writ ref'd

n. r. e.); Miles-Sierra Co. v. Castillo, 398 S.W.2d 948, 953 (Tex.Civ.App., San Antonio 1966, writ ref'd n. r. e.); "Hodges on Special Issue Submission in Texas," pages 50–58. Appellants' first point is overruled.

■ In their second point appellants say that the court erred in refusing to submit their requested issues inquiring whether Pierson was carrying the sign in such manner as to obscure his vision, whether such conduct was negligence, and whether such negligence was a proximate cause of the accident.

There is no evidence in the record that appellee Pierson did carry the sign in such a manner as to obscure his vision. The three issues in question were defensive issues. It was the burden of appellants to support their requested issues by *some* evidence (more than a mere scintilla of evidence, Joske v. Irvine, 91 Tex. 574, 44 S.W. 1059 (1898)) that the sign did obscure Pierson's vision. Pierson testified that he was carrying the sign with the bottom resting in his right hand and the top resting against his right arm and shoulder, that he looked both to his right and to his left and saw no moving vehicle and that his vision to the right and to the left was not obscured. True, he was an interested witness and ordinarily the testimony of an interested witness, though uncontradicted, raises a fact issue to be determined by the jury. However the general rule is not applicable if such testimony is clear, direct and positive and there are no circumstances tending to discredit or impeach the testimony. Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co., 391 S.W.2d 41, 47 (Tex.Sup. 1965); Cochran v. Wool Growers Central Storage Co., 140 Tex. 184, 166 S.W.2d 904 (1943). Pierson's testimony was clear, direct and positive. We find no circumstances tending to discredit or impeach his testimony.

■ Moreover, a jury is not entitled to make an opposite finding solely from the uncontradicted testimony of an interested party. Texas & N. O. R. Co. v. Grace, 144 Tex. 71, 188 S.W.2d 378 (1945); Dixon v. Burling, 277 S.W.2d 957 (Tex.Civ.App., Galveston 1955, no writ); Mackey v. Gulf Ins. Co., 443 S.W.2d 911, 913 (Tex.Civ. App., Amarillo 1969, no writ). We overrule appellants' second point.

In their third to ninth points inclusive appellants attack the submission of Special Issue No. 8 and the jury's answer thereto. The issue inquired what amount of money would fairly and reasonably compensate appellee for medical, hospital, doctors and drug expense, if any, which in reasonable probability will necessarily be incurred in the future for treatment of his injuries. The jury answered "$4,000."

Appellants challenge the submission of Issue No. 8 and the answer to it on the grounds that (3) the issue is speculative; (4) there is no competent evidence to support submission; (5) there is insufficient evidence to support the submission;[1] (6) there was no competent evidence to support the jury's answer of $4,000; (7) there was insufficient evidence to support the jury's answer; (8) it was error to admit into evidence the testimony of Dr. Andreassian that the estimated medical expense of appellee was between $2,000 and $12,000 or $15,000 and (9) it was error to enter judgment in an amount which includes the $4,000 answer of the jury.

It is undisputed that Pierson's injuries were serious and permanent. He suffered a comminuted—that is, a shattered or fragmented—fracture of his left hip. He was in the hospital 25 days. While there his urinary system became blocked and an operation was necessary. After he went home his son cared for him for six weeks. He suffered great pain. His past hospital and medical expenses amounted to $3,081.-29. In December of 1967, more than a year after he was injured, he went back to work

---

1. This is really a "no evidence" point.

at his old job with Stevenson Advertising Company. But he was able to work only a few days. He has been unable to work since then. He limps when he walks. He cannot stand or walk very long at a time.

One of the doctors who attended him, Dr. Andreassian, an orthopedic surgeon, testified with reference to future hospital and medical expenses. Pierson's hip has not mended well. To correct the present condition, if it can be corrected, another operation is called for. If such operation is performed it would be necessary to break the bone and set it again. Dr. Andreassian estimated that the future expense to Pierson, including the operation, could be as little as $2,000, or "could be as much as $12,000 or $15,000."

However the doctor did not recommend that the operation be performed. After weighing the "options"—that is, the grounds favoring versus the grounds against the advisability of the operation —he in substance recommended that the operation *not* be performed. He testified that Pierson's condition is permanent and will continue to become worse. But taking into consideration that Pierson was 68 years of age at the time of the trial, that he has had mild emphysema since 1955, that he has had urinary complications and considering the risk to his heart and lungs and the possibility that the operation might result in his death, the doctor advised Pierson not to undergo an operation.[2]

■ We are convinced that Dr. Andreassian's estimate of future medical and hospital expenses from $2,000 to $12,000 or $15,000 is not competent evidence to support the jury's answer of $4,000 in answer to Special Issue No. 8 for these reasons:

(1) They are not probable expenses, they are only possible, even improbable, expenses which will not be incurred if the doctor's advice is followed. Fisher v. Coastal Transport Co., 149 Tex. 224, 230 S.W.2d 522 (1950); Hill v. Texas, New Mexico & Oklahoma Coaches, 153 Tex. 581, 272 S.W.2d 91, Syl. 4 (1954).

(2) Even if an operation should be performed the gap between the $2,000 minimum and the $12,000 or $15,000 maximum is so great as to make the estimate too speculative and conjectural to serve as a guide for the jury. While it is true that opinions as to future medical expenses are necessarily somewhat speculative, there are limits to which such speculation may go. We think that those limits have been exceeded here.

After we eliminate the doctor's estimate of possible expense in the unlikely event an operation is performed, we find no evidence that will support the jury's answer of $4,000 for future medical, hospital, doctors and drug expense. We sustain appellants' points of error Nos. 3 to 9, inclusive.

■ It is obvious that the court's judgment of $34,000 included the $4,000 for future possible expenses found by the jury. Since we find no competent evidence to support the finding of $4,000 for future

2. The doctor's testimony in this regard was as follows:
 "Against surgery is—the biggest thing is it does not make any sense to go in and correct a situation and have a dead person. And he is a gentleman that is up in his years, he has a lung condition which necessarily will be more—under greater danger because of anesthesia irritating it, and what not, together with other things like loss of blood and how his bowels would react, how his kidneys would react; these are things against. Therefore, the position that I maintain with Mr. Pierson has been the result of weighing one set of factors against the other set. As a result, I have told him, 'So long as you do not have extremely much pain and you are able to get around, let it ride. Let us not, in the name of trying to improve this, risk something more major.' So that's where I stand professionally with him."
 \* \* \* \* \*
 "Q Doctor, as time goes on, will the risks for the surgery, will they get any better or stay the same or get worse?
 A It would be worse. The more time goes on, it's bound to be worse."

medical expenses we think that the judgment should be reduced to $30,000.

In Hill v. Texas, New Mexico & Oklahoma Coaches, 153 Tex. 581, 272 S.W.2d 91, 94 (1954), cited above, our Supreme Court held that items *d* and *f* of the damage issue were subject to the objection urged. That objection was that the court failed as to said items to instruct the jury they could allow only such damages as *reasonably and probably* resulted from the accident. See the opinion of the Court of Civil Appeals in 266 S.W.2d 412, 414 (reversed by S.Ct. on other grounds). The appellee Hill offered a remittitur of the damages allowed under such items, but the Court of Civil Appeals refused to allow the remittitur. This was held by the Supreme Court to be error. Since said items were submitted separately and were capable of definite and accurate ascertainment as to amount, the remittitur should have been allowed. We have a similar situation here and we shall follow the same procedure. See also Owen Development Co. v. Calvert, et al., 157 Tex. 212, 302 S.W.2d 640, 643 (1957); Black v. Frank Paxton Lumber Co., 405 S.W.2d 412, 415 (Tex.Civ. App., Dallas 1966, writ ref'd n. r. e.); Smith v. Dye, et al., 294 S.W.2d 452, 454 (Tex.Civ.App., Galveston 1956, no writ).

If the appellee Pierson within ten days will file a remittitur of $4,000 the judgment of the trial court will be affirmed in the amount of $30,000. Otherwise the judgment will be reversed and remanded for another trial.

## ON FILING OF REMITTITUR

In our main opinion handed down January 16, 1970 we said that should appellee file a remittitur of $4,000 within ten days, the judgment would be affirmed for $30,-000.

On January 20, 1970 appellee filed a remittitur in which he states, "George Pierson, Appellee, hereby releases and makes remittitur of such excess to the extent and in the amount of $4,000.00 and prays that

the judgment of the trial Court be accordingly reformed and affirmed."

In view of the remittitur filed by appellee the judgment of the trial court is reformed and judgment in favor of appellee in the amount of $30,000 is affirmed.