**HONEYWELL, INC., Appellant,**

v.

**IMPERIAL CONDOMINIUM
ASSOCIATION, INC.,
Appellee.**

No. 05–85–00532.

Court of Appeals of Texas,
Dallas.

July 2, 1986.
Rehearing Denied Aug. 8, 1986.

Judy C. Norris, Dallas, for appellant.
Irwin Lightstone, Dallas, for appellee.

Before WHITHAM, GUILLOT and HOWELL, JJ.

HOWELL, Justice.

Honeywell appeals a judgment awarding the consumer, Imperial House Condominium Association, treble damages under the 1977 version of the Deceptive Trade Practices Act. Appellant contends that the trial court erred in allowing the consumer to introduce parol evidence to prove an actionable misrepresentation and urges that the consumer was legally precluded from recovery under the DTPA. Honeywell further contends that, even if the DTPA applied, the consumer was not entitled to automatic trebling of its recovery because it is impossible to determine whether some of the DTPA violations occurred before the 1979 amendment, which required additional jury findings in order to obtain the trebling of damages. We hold that the parol evidence rule does not apply where recovery is based upon a violation of the statute rather than a contractual duty and that the consumer was entitled to recover under the DTPA because Honeywell engaged in a deceptive practice when it represented that it would provide proper water treatment and later failed to do so. We further hold that the trial court properly awarded automatic treble damages because all of the consumer's causes of action under the DTPA accrued, at least in part, before the automatic trebling provision was removed from the act. Finding no merit in these or in Honeywell's other points of error in which it complains that the amount of the consumer's actual damages and attorney's fees were unsupported by legally or factually sufficient evidence and alternatively that they were excessive, we affirm the trial court's judgment.

The relevant facts are mostly undisputed. In May 1978, Honeywell's representatives made two presentations to the consumer's board of directors in an effort to sell the consumer a maintenance contract covering its heating and cooling systems. During these meetings, the sales representatives distributed promotional literature describing the services that Honeywell would perform under the contract. In these booklets, Honeywell represented that, if the consumer entered into the service contract, Honeywell would schedule its work in order to provide "exactly the right maintenance" and assure that "nothing [would be] overlooked." In addition to a basic services plan, Honeywell offered chemical treatment for the water which circulated through certain portions of the heating and cooling systems as an additional option.[1]

---

1. The promotional literature described this service in the following manner:

An automatic quality control program for water used in heating and cooling systems Honeywell provides controlled chemical analysis and treatment of water circulating in your boilers, chillers, cooling towers, condensors, pumps and related piping. This service, which increases efficiency and prolongs equipment life, is performed under separate contract or as part of a Mechanical Systems Maintenance program.

PROGRAM AT A GLANCE
1. Before service commences, your water handling system is surveyed to determine water make-up and quality problems that may be

Following these meetings, the consumer entered into a maintenance contract with Honeywell which included the water treatment service.

Under the agreement, Honeywell's services commenced on July 1, 1978. Although the consumer found Honeywell's services to be less than satisfactory in many respects unrelated to the water treatment service, it twice agreed to extend the one-year term of the contract after Honeywell offered to forego price increases in recognition of the problems that the consumer had experienced. For reasons not entirely clear, the consumer declined a third extension, and the contract terminated on June 30, 1981. To repair and maintain the heating and cooling systems after terminating Honeywell's services, the consumer hired a former Honeywell technician who had worked on these systems while employed by Honeywell.

During the course of his work, this technician discovered that the water in the system in the east building of the condominium complex was "full of slush, rust and scale" and that several components in this heating and cooling system had been damaged by corrosion. After learning of this damage, the consumer sued Honeywell for breach of contract and DTPA violations, alleging that Honeywell failed to provide water treatment and that its services were deficient in other respects.

Testifying as the consumer's expert, the technician told the jury that in his opinion Honeywell had never treated the water in the heating system. He based his opinion on the quantity of pollutants in the water and the fact that, while employed by Honeywell, he never observed that Honeywell had installed the equipment necessary to add chemicals to the water in the heating system. The only controverting evidence offered by Honeywell was a service report that one of its employees had painted the boiler in the *west* building and had added water treatment chemicals in December of 1978. Even though the only boiler on the entire premises was located in the east building, this report was nevertheless some evidence of treatment to the heating system water.

The consumer's expert further testified that Honeywell's service reports were often incorrect and occasionally contained reports of work that was never actually performed. Honeywell in return introduced invoices which reflected that it purchased water treatment chemicals and equipment for use on the consumer's premises. In addition, it was not disputed that Honeywell had added chemical treatment to the cooling system for the east building.

Upon the trial court's instruction that Honeywell would have violated the DTPA if it misrepresented the quality or benefits of its services, breached an express warranty or engaged in unconscionable conduct, the jury found that Honeywell violated the DTPA and that it breached its service contract. The consumer elected to recover under the DTPA and the trial court rendered judgment on the jury's verdict for three times the consumer's net recovery.[2]

present. Typical problems include metal corrosion, scale buildup and biological fouling. 2. Based on this survey, appropriate biodegradable treatment chemicals and dosages are specified to counter your specific problems. Your water make-up is positively controlled, and discharged effluents are non-polluting. 3. On systems requiring continuous water analysis, a real time monitoring system is installed. This unit is programmed to analyze the circulating water and automatically adjust chemical feed rates, bleed intervals, etc. You get 24–hour surveillance without labor cost. 4. On systems where periodic water analysis is sufficient, a computer program determines the correct schedule of Honeywell service

calls to analyze water samples and make necessary adjustments in the treatment program. 5. During service calls, preventive maintenance is performed on all treatment devices, feed chemicals are replenished and the entire system is inspected to ensure proper function. 6. When this service is furnished as part of a Mechanical Systems Maintenance contract, your water treatment becomes part of a larger maintenance program that includes preventive care of all heating and cooling equipment.

2. Honeywell prevailed on a counterclaim to recover payment for extra work performed that was not included in the maintenance agreement. In accordance with *Smith v. Baldwin,*

## I. *Extrinsic Evidence of Misrepresentation*

Honeywell first complains that the trial court violated the parol evidence rule by admitting extrinsic evidence of Honeywell's pre-contractual representations. Over Honeywell's objection, the court allowed the consumer to introduce Honeywell's promotional literature for the limited purpose of proving that Honeywell's representations concerning the quality and benefits of its services did not accurately depict those actually received. We find no merit in Honeywell's complaint.

Agreeing with the decisions of the courts of appeals in *Oakes v. Guerra*, 603 S.W.2d 371, 374 (Tex.Civ.App.—Amarillo 1980, no writ), and *United Postage Corp. v. Kammeyer*, 581 S.W.2d 716, 720–21 (Tex.Civ. App.—Dallas 1979, no writ), the supreme court recently decided that the parol evidence rule does not prevent a consumer from introducing statements made before the formation of a contract to show that the provider of goods or services engaged in a deceptive trade practice. *Weitzel v. Barnes*, 691 S.W.2d 598, 600 (Tex.1985). This holding was based upon the differences between the nature of an action for a breach of contract and that of an action for a deceptive trade practice.

The Supreme Court reasoned that the justifications for the parol evidence rule do not apply in deceptive trade practices cases where the consumer sues on the basis of pre-contractual representations because the consumer's recovery is not dependent upon the alteration or contradiction of a contract but rather upon conduct which was itself actionable under the DTPA without regard to the obligations imposed on the parties by the contract.

In other words, the supreme court recognized that contractual liability and liability under the DTPA derive from two different sources. Contractual liability turns solely on the agreement of the parties whereas liability under the DTPA springs from the statute. As a general proposition, liability under the DTPA is neither increased nor diminished by the presence of a formal written contract covering the identical subject matter.

Unlike contractual liability, resulting from the voluntary agreement of the parties, liability for false, misleading and deceptive acts is provided by the legislature for the breach of a duty imposed by it. These duties cannot be altered by the agreement of the parties. *See* Tex.Bus. & Com.Code Ann. § 17.42 (Vernon Supp. 1986). To apply the parol evidence rule in DTPA cases would frustrate the legislature's purpose in passing the statute without furthering the objectives of the parol evidence rule. As the supreme court succinctly announced in *Weitzel*, "traditional contractual notions do not apply" when the consumer seeks recovery for the breach of a duty imposed by the DTPA. 691 S.W.2d at 600; *cf. Smith v. Baldwin*, 611 S.W.2d 611, 614 (Tex.1980) (holding that substantial performance is not a defense to DTPA liability). Although the *Weitzel* decision addressed the admissibility of oral representations, its rationale compels the same result in this case where the representations were written. Consequently, we hold that the trial court did not err when it allowed the consumer to introduce Honeywell's promotional literature for the purpose of proving that Honeywell violated the DTPA. *See, e.g., Tom Benson Chevrolet, Inc. v. Alvarado*, 636 S.W.2d 815, 820 (Tex.App.—San Antonio 1982, writ ref'd n.r.e.) (holding that a writing not part of the contract was admissible to show that the seller misrepresented the price of an automobile).

## II. *Misrepresentation Under the DTPA*

Honeywell next contends that as a matter of law the consumer could not recover under the DTPA because a mere breach of contract, without more, is not a false, misleading or deceptive act. Honeywell argues that this case involves a mere breach

---

611 S.W.2d 611, 617 (Tex.1980), the trial court deducted the amount recovered on the counterclaim from the consumer's actual damages and

trebled the difference. The consumer does not complain of the offset in this appeal.

of contract because all of the representations in its promotional literature were incorporated into the terms of the contract and, therefore, the consumer can show no failure to comply with a pre-contractual representation that was not also a breach of contract. This proposition is untenable in light of the supreme court's decision in *Smith v. Baldwin,* 611 S.W.2d at 615–16.

The consumer there counterclaimed against his builder alleging that the builder failed to build a home which, as promised both in the contract and in discussions with the consumer,[3] would qualify for financing by the Veteran's Administration. The consumer sought to recover on the grounds that the builder both breached the construction contract and misrepresented his services in violation of section 17.46(b)(7) of the DTPA. A trial before the court resulted in a DTPA judgment for the consumer. The court of appeals disallowed a DTPA recovery and limited the consumer's relief to an award of the cost of remedying construction defects, the builder having substantially performed. The supreme court reversed and held that the consumer was entitled to his DTPA remedies. The court ruled that "representing that goods or services are of a particular standard, quality or grade ... if they are of another" applies to goods and services to be provided in the future, and concluded that the builder committed a deceptive act by representing that the house when built would qualify for V.A. financing.

■ The case at bar is indistinguishable from *Smith v. Baldwin.* Honeywell by its literature and by the formal contract represented that it would provide proper water treatment to extend equipment life. These representations later proved to be false. Nothing further is required in order to meet the *Baldwin* test. 611 S.W.2d at 616; *see also Hurst v. Sears, Roebuck & Co.,*

647 S.W.2d 249, 252 (Tex.1983); *Weitzel,* 691 S.W.2d at 600. We reject Honeywell's argument that intentional, reckless or negligent conduct must be proved in order to invoke the act.

Because both the pre-contractual and the contractual representations proved to be false in the instant case, we need not decide whether the supreme court's holding in *Smith v. Baldwin* was, as one observer contends, based exclusively upon the pre-contractual representations. *See* Patton, *Case Law Under the Texas Deceptive Trade Practices-Consumer Protection Act,* 33 Baylor L.Rev. 533, 556–59 (1981). Nor is it necessary for us to explore whether Honeywell could have been held liable for the damages found by the jury under the alternative theories of unconscionability or breach of an express warranty. The misrepresentation is enough to establish that Honeywell breached its statutory duty. Honeywell's points of error complaining that the DTPA is inapplicable are overruled.

### III. *Recovery of Mandatory Treble Damages*

The contract was dated June 26, 1978; the service period commenced promptly thereafter and continued through June 30, 1981. Honeywell next urges that the trial court erred in trebling the consumer's damages pursuant to the 1977 version of the act contending that the recovery was governed at least in part by the 1979 act, making treble damages contingent upon a finding that the DTPA violation was committed knowingly. The consumer did not obtain a jury finding that Honeywell acted knowingly.[4]

The verdict found only that Honeywell committed an act or acts prohibited by the DTPA. Honeywell argues that these findings do not preclude the possibility that

---

**3.** *See Smith v. Baldwin,* 586 S.W.2d 624, 626 (Tex.Civ.App.—Tyler 1979), *rev'd,* 611 S.W.2d 611 (Tex.1980).

**4.** Honeywell has overlooked that, even under the 1979 version of section 17.50(b), the consumer is automatically entitled to recover, in addition to actual damages, a penalty equal to

two times the first one thousand dollars of actual damages. Tex.Bus. & Com.Code Ann. § 17.-50(b)(1) (Vernon Supp.1986). We treat Honeywell's point as an attack upon the trebling of those damages that exceed one thousand dollars.

Honeywell's liability was based in part upon damages resulting from either a breach of warranty or an unconscionable act occurring after the effective date of the 1979 amendments.

■ Generally, a case will be governed by the version of the DTPA in effect when the deceptive act occurs. *See, e.g., La Sara Grain Co. v. First National Bank of Mercedes,* 673 S.W.2d 558, 565 (Tex.1984) (involving whether the 1975 or 1977 amendments applied); *Woods v. Littleton,* 554 S.W.2d 662, 666 (Tex.1977) (involving whether the conduct occurred before the DTPA was enacted in 1973). Further, unlike previous acts amending the DTPA, the 1979 Legislature expressly limited its amendments to prospective application. "Nothing in [these amendments] affects either procedurally or substantively a cause of action that arose either in whole or in part prior to [August 27, 1979,] the effective date of [these amendments]." Act of June 13, 1979, ch. 603, § 9, 1979 Tex.Gen. Laws 1332. Thus, the point of error turns on whether the consumer's causes of action arose in part before August 27, 1979.

Although not defined in the DTPA, this phrase has been construed on many occasions in the context of the venue statute dealing with actions against corporations. In that context, the supreme court held in *Stone Fort National Bank of Nacogdoches v. Forbess,* 126 Tex. 568, 91 S.W.2d 674, 676 (1936), that a venue provision allowing suit whereever a cause of action arose in part permitted suit where some part of the transaction creating the primary right occurred or where the breach of that right occurred. Generally, statutes are presumed to have been enacted with full knowledge of the existing law and awareness of the meaning of the words used. *See Allen Sales & Service Center, Inc. v. Ryan,* 525 S.W.2d 863, 866 (Tex. 1975); *Miller v. Texas Employer's Insurance Association,* 488 S.W.2d 489, 491 (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.). Therefore, we presume that, in choosing a phrase similar to that contained

in the venue statute, the legislature intended to convey the same meaning.

■ Presently, we hold that the consumer's cause of action arose "in part" not later than the date when the business relationship was created by the execution of the contract on June 26, 1978. It follows that the consumer's cause of action arose in part while 17.50(b) mandated that a consumer who recovers actual damages for violation of the DTPA was automatically entitled to recover three times the amount of the actual damages and that the court did not err in trebling the consumer's damages. *Cf. Cocke v. White,* 697 S.W.2d 739, 745 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.) (holding that DTPA action based on breach of implied warranty arose in part at the time of sale); *accord, Horta v. Tennison,* 671 S.W.2d 720, 723-24 (Tex. App.—Houston [1st Dist.] 1984, no writ). We reach the same conclusion with respect to any recovery that might have been based upon proof of an unconscionable act.

### IV. *Amount of Damages and Attorney's Fees*

Honeywell next challenges the legal and factual sufficiency of the evidence to support the findings of the jury on the amount of damages and attorney's fees. Alternatively, it contends that the amounts of these awards were excessive and that we should order a remittitur. In reviewing the legal sufficiency question, we consider only the evidence and reasonable inferences therefrom which support the jury's answer to the special issue. *International Armament Corp. v. King,* 686 S.W.2d 595, 597 (Tex.1985). When viewed in this manner, the evidence is legally sufficient if it supplies a reasonable basis upon which the jury could have arrived at its answer without deciding the question based on surmise or suspicion. *See Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983); *see generally* Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Texas L.Rev. 361 (1960). If the evidence is legally sufficient, we must then decide whether it is factually sufficient. In doing

so, we consider all of the evidence to determine whether the jury's answer was manifestly wrong or unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951); *Martin v. United Trust Co. of New York*, 690 S.W.2d 300, 306 (Tex.App.—Dallas 1985, writ ref'd n.r.e.); *see generally* Calvert, *supra;* Garwood, *The Question of Insufficient Evidence On Appeal,* 30 Texas L.Rev. 803 (1952). Finally, if the evidence is both legally and factually sufficient, we must then decide whether the amount awarded by the jury was so excessive that it is shocking to the conscience. *Clark v. Smith*, 494 S.W.2d 192, 198 (Tex. Civ.App.—Dallas 1973, writ ref'd n.r.e.).

Under these standards, we first consider Honeywell's complaints attacking the amount of damages. However, we consider these complaints only insofar as they concern the finding of damages resulting from the DTPA violation. Because the trial court's judgment was not based upon a breach of contract, any defect concerning the determination of damages on that ground could not have caused the rendition of an improper judgment and, thus, would not require reversal. Tex.R.Civ.P. 434.

Regarding the DTPA violation, the trial court submitted the following issue: "What sum of money, if any, do you find from a preponderance of the evidence would compensate [the consumer] for the loss, if any you have found[,] in [the previous issue, to have been produced by acts prohibited by the DTPA]?" The jury answered, "$36,000.00."

The only evidence concerning the consumer's damages was introduced through the consumer's expert witness. Honeywell points to one portion of his testimony to attack the jury's finding and the consumer points to another to support it. Honeywell argues that the expert's testimony was only "conjecture or speculation" because he stated in response to a question concerning the dollar amount of damages: "I can just give you a ballpark figure ... around 73,000 to possibly 80,000 [dollars]." The consumer on the other hand points to the testimony that, as a result of the corrosion

caused by inadequate water treatment, it was necessary to replace a boiler and sixty coil units. The expert further stated that, based on what his suppliers charged, it would cost between $900 and $1000 dollars to replace each coil unit and between $15,000 and $18,000 to install a new boiler. In addition, he testified that the consumer had only obtained one-half of the useful service life of the previous equipment. Based on this testimony, the consumer argues that the evidence supports the jury's verdict because the jury could have arrived at an amount of damages ranging between $34,500 and $39,000 by taking one-half of the replacement cost figures.

■ We find that the evidence supported the jury's answer. Under the "no evidence" test, the testimony of the expert relied upon by the consumer and the reasonable inferences which the jury could have gleaned from it provide more than a scintilla of evidence that $36,000.00 would compensate the consumer for the damages resulting from Honeywell's violation of the DTPA. It would be mechanistic, unrealistic, and manifestly unfair to render a take-nothing judgment or to require another trial simply because the consumer's expert implicitly recognized that his opinion regarding the prospective costs to repair the heating and cooling system was not subject to precise scientific verification. It is hardly uncommon for different experts to render differing opinions on such matters. For instance, in *Crabtree v. Burkett*, 450 S.W.2d 728, 732 (Tex.Civ.App.—Beaumont 1970, no writ), one expert fixed costs of repair at $500 while another estimated that $5,800 would be required. The court found this testimony both legally and factually sufficient to support the jury's award of $1,250. We see no reason why a different rule should apply when the range of the amount of damage is supplied by one expert instead of two, so long as the latitude given the jury by the expert's opinion is not so great that it allows the jury to engage in pure speculation. *See City of Dallas v. Pierson*, 450 S.W.2d 99, 103 (Tex.Civ.App. —Dallas 1970, no writ).

The range provided by this evidence was legally sufficient to allow the jury to determine the amount of damages by calculation rather than by engaging in surmise and conjecture as proscribed by *Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059 (1898). No question is presented concerning whether the proper measure of damages was employed. The "no evidence" claims are overruled.

In view of the fact that Honeywell offered no contradictory evidence relating to damages, neither can we say that the answer was contrary to the great weight and preponderance of the evidence or that the amount of actual damages found by the jury was so excessive that a remittitur is required.

We turn to the complaints relating to the attorney's fee award. Honeywell again complains that the evidence is either legally or factually insufficient and that the amounts awarded are so excessive that we should order a remittitur. The "no evidence" and "factually insufficient" evidence points are waived because Honeywell has failed to brief them. *See Trenholm v. Ratcliff*, 646 S.W.2d 927, 934 (Tex.1983); *see also National Bonding Agency v. Demeson*, 648 S.W.2d 748, 751 (Tex.App.— Dallas 1983, no writ). Thus, we only address the remittitur point. The factors to be considered in reviewing the reasonableness of attorney's fees are: the complexity and difficulty of the case, the amount in controversy, the time devoted to the case, the experience of the attorney, and the skill with which the case was presented. *Stuckey v. White*, 647 S.W.2d 35, 38 (Tex.App.— Houston [1st Dist.] 1982, no writ). Honeywell contends that the recovery of $28,-244.86 for attorney's fees is excessive because the attorneys representing the consumer overworked the file and attempted to make this a "career case," citing *Capital Life Insurance Co. v. Rutherford*, 468 S.W.2d 535, 537 (Tex.Civ.App.—Houston [1st Dist.] 1971, no writ). In *Rutherford*, the court ordered a $2,000 remittitur of a $4,586.75 attorney's fee award in a case where the amount in controversy was $1,075.00 plus a twelve percent penalty and interest. The court concluded that, in light of the record and the previous experience of the members of the court as practicing attorneys, 112 hours of work was an excessive amount of time to recover the amount at issue.

In the present case, the attorney's fee award does not exceed the amount of actual damages recovered and is far less than the amount of the judgment for the DTPA violation. The two attorneys representing the consumer testified that the lawyer with fourteen years' experience charged $150 an hour while the other attorney charged $100 per hour. Together they spent 179.5 hours in conferences with clients, investigation, briefing, discovery, and preparation of pleadings during the two years that elapsed from the time they took the case. Although *Capital* found 112 hours for pretrial matters to be excessive in a case with a maximum recovery of less than two thousand dollars, it does not stand as authority to label 179.5 hours in preparation of this case as clearly excessive in view of the amount that the consumer recovered, the number of alternative theories of recovery sought to be proved, the defense of the counterclaim, and a detailed exhibit placed in evidence justifying the attorneys' time. The attack upon the attorneys' fee recovery is rejected.

## V. *Conclusion*

In light of our holding that the consumer was entitled to recover under the DTPA, we need not discuss Honeywell's point of error in which it complains of cumulative error in admitting evidence concerning and references to the DTPA violations. All points of error are overruled and the judgment of the trial court is affirmed.